MARY KONDIAN *vs.* YELLOW CAB COMPANY.
LEO KONDIAN *vs.* YELLOW CAB COMPANY.

FEBRUARY 3, 1961.

PRESENT: Condon, C.J., Roberts, Paolino, Powers and Frost, JJ.

FROST, J. These are actions of trespass on the case for negligence brought by a wife and her husband respectively to recover damages for injuries allegedly suffered by the wife by reason of the negligence of the defendant. The actions were tried together before a justice of the superior court sitting with a jury and resulted in verdicts of $5,000 for the wife and $342.85 for the husband. Thereafter the trial justice granted the defendant's motion for a new trial in the wife's case unless she filed a remittitur of all of the verdict in excess of $3,000. Such remittitur was filed. In the husband's case the defendant's motion for a new trial was denied. The defendant duly excepted to such decision and to the refusal of the trial justice to grant a new trial unconditionally in the case of the wife, and each case is before us on the defendant's exception thereto.

In each case defendant's other exception to the refusal of the trial justice to direct a verdict has not been briefed or argued and therefore is deemed to be waived. *Fraraccio v. Progress Ice Cream Co.,* 77 R. I. 315.

Since the husband's case is dependent upon his wife's case, we shall hereinafter discuss the points raised as though only her case were before us, but our decision will apply to both cases.

The plaintiff testified that she lived with her family at 39 Burnside street in South Providence; that on the afternoon of November 19, 1955 she had done some shopping downtown and around 5:30 p.m. took a cab on Weybosset street near Richmond street to return to her home; that it was a yellow cab with yellow and black fenders; that it

had the number Gaspee 1-5000 on the rear part of the cab and on the top, and the number 473 somewhere on the right front of the cab; and that the driver, a rather good-looking fellow wearing a black and white yachtsman's cap, had a chubby face and a ruddy complexion.

She further testified that he drove down Weybosset street to Eddy, through Eddy street to Public street; that when they passed Ocean street she realized the driver had to take the next left; and that at the intersection of Public and Burnside streets the driver made a sudden left turn. Cars were parked on both sides of Burnside street leaving a narrow roadway. A truck was coming out and the driver of the cab made a sudden stop and "quite hastily stopped by applying his brakes fast." She stated, "They hadn't hit but I don't think a hair could have gone between them." She stated that when the cab stopped suddenly she was jolted forward hitting her chest and neck on the front of the car, actually taking her body off the seat, and that when the cab came to a dead stop she was thrown back snapping her neck to the back. The driver said, "Oh, that was a close one." He asked if I was all right to which I said, "I think so."

After leaving the cab plaintiff went into the house. Not feeling very well, she took off her coat and threw herself on the bed. That night she went to bed early and the next morning, which was Sunday, she got up with "a mild stiff neck." She then told her husband of the incident of the day before. The pain in her neck on the right side increased on Sunday. On Monday either she or her husband called defendant but no one ever called to see her. On Tuesday her husband took her to see Dr. Vincent Zecchino at his office. He gave her an injection and medication in the form of pills and prescribed a collar which held her chin up. She saw her doctor two or three time a week until January 5, 1956. Doctor Zecchino advised her to go to a nerve specialist and she went to Dr. Barry B. Mongillo the first week

of 1956. She visited this doctor two or three times a week until discharged on March 28, 1956. On April 17, 1956 she went to work for her former employer.

The plaintiff testified that once while going to visit Dr. Mongillo she saw the driver of the cab in which she had received an injury. He was leaning against the door of the cab on which was the number 473.

Doctor Zecchino testified that he specialized in orthopedic surgery; that he examined plaintiff on November 22, 1955; that she told him she was in a cab on November 19, 1955 which stopped short to avoid striking a truck as the driver was making a turn at the intersection of Burnside and Public streets. He found plaintiff suffering from a strain to the neck with some secondary neuroradiculitis in the right arm; and that the only objective evidence at the time was some spasm in the musculature of the neck. He had her measured for a collar to immobilize the neck and prescribed cervical traction. The doctor testified that he believed plaintiff's complaints were related to her accident.

Doctor Barry B. Mongillo testified that he specialized in neurology and psychiatry; that plaintiff was wearing a collar when he first saw her on January 6, 1956; and that she told him that on November 19, 1955 she was riding in a cab which nearly collided with a truck, causing her to be propelled forward striking her chest on the back of the front seat and causing a whiplash injury to her neck. He testified that she maintained her neck in a rather rigid and awkward fashion; that the mobility of her head, neck and shoulder was limited; and that he observed the spasm of muscles in the area of which she complained. He also noted a diminution of her ability to perceive hot and cold over the index finger of her right hand; that she was suffering from an irritative neuritis; and that he treated her from January 6 to March 26, 1956. The doctor said that her condition was consistent with the type of injury which she described to him.

The defendant introduced certain day cards, so called, which were made out in part by the various operators of the company showing the trips made by them. It was shown that an operator by the name of Bob Kane was in charge of cab 473 on November 19, 1955 at the time plaintiff stated she was a passenger in it. The card showed no trip made by Kane in cab 473 in the section of Providence where Weybosset, Public and Burnside streets are located.

Earl F. Adams testified that he was safety engineer and claims director of defendant company; that the first report he had of the accident to plaintiff was on January 16, 1956 when an attorney called; that about a year after the alleged accident Kane left the employ of defendant to go to California; that he wrote to Kane about six months before the trial but had received no reply; that no attempt was ever made to take Kane's deposition; and that Dr. Maurice Silver examined plaintiff at the instance of defendant on March 8, 1956.

The specific questions argued in this court were: Did the trial justice err in refusing to grant defendant's motion for a new trial in the husband's case and in granting the motion conditionally in the wife's case?

The plaintiff claims to have been injured by the sudden stopping of the cab in which she was a passenger. She insists that the driver was attempting to make a right angle turn from one street into another at an excessive speed and was obliged to make a sudden stop to avoid collision with an oncoming vehicle. She produced no witnesses to the alleged accident.

The trial presented to the court and jury a situation in which a most important factor in the determination of the issues was the opportunity to see and hear the witnesses. There was a sharp conflict in the evidence presented. The jury evidently believed the plaintiff. The trial justice at the conclusion of arguments on defendant's motion for a new trial stated: "In this case it is the judgment of this

Court that it was a jury question as to whether, under all the circumstances, the defendant's operator was negligent, and this Court, after a careful and independent consideration of all the testimony, is of a view that the credible evidence supports the plaintiff's position that the defendant's operator was negligent."

The trial justice in his language thus referred to the most controversial point in the case, a case replete with contradictions, and found that the evidence as to the abrupt stop by defendant's driver supported plaintiff's allegation of negligence. He has given his approval to the verdicts of the jury except as to the amount in the wife's case, and in that a remittitur has been filed. We have given careful consideration to all the evidence and cannot say that the trial justice was clearly wrong. *Grillo* v. *Schaperow*, 81 R. I. 501; *Southbridge Roofing Co.* v. *Providence Cornice Co.*, 39 R. I. 35.

In each case the defendant's exception is overruled. The case of Mary Kondian v. Yellow Cab Company is remitted to the superior court for entry of judgment on the verdict as reduced by the remittitur, and the case of Leo Kondian v. Yellow Cab Company is remitted to that court for entry of judgment on the verdict.

*Sherwood & Clifford, William A. Curran,* for plaintiffs.

*McGee and Doorley, Frank J. McGee,* for defendant.